**STATE of Minnesota, Respondent,**

v.

**Bruce Philip LARSON, Appellant.**

**No. C2–88–2379.**

Supreme Court of Minnesota.

March 23, 1990.

Rehearing Denied May 15, 1990.

Michael F. Cromett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, and D. Gerald Wilhelm, Martin County Atty., Fairmont, for respondent.

COYNE, Justice.

In its decision in this case the court of appeals concluded that the trial court erred in admitting certain extrajudicial statements made by an available but nontestifying complainant in a child sex abuse prosecution. *State v. Larson*, 447 N.W.2d 593, 597 (Minn.App.1989). The court of appeals ruled that the error was prejudicial error, assuming that the complainant was competent, as the trial court determined, and therefore available. *Id.* at 598–99. The court ruled, however, that the trial court may not have realized the effect of its determination that the child was competent, and it remanded with instructions that if the trial court on remand changed its competency determination based on its awareness of the effect of the determination, then a new trial would not be needed. *Id.* One member of the panel, arguing that a new trial was required, dissented from the remand for a reconsideration of the issue of competency. *Id.* at 600. We granted both the defendant's petition for review and the cross-petition for review filed by the state. Having concluded that the trial court did not err in admitting the hearsay statements of the child, we reverse the decision of the court of appeals and affirm the judgment of conviction.

The child in this case, B., was born in May of 1983. On separating from defendant, B.'s mother was awarded custody of B., subject to defendant's visitation privileges. In late April 1987, when she was not quite four years old, the child complained to her mother of vaginal soreness and burning urination. Her mother took her to a family practice clinic. The physician's assistant, who conducted the examination, saw redness and swelling around the vaginal opening. Suspecting abuse, the examiner asked B. who had touched her. B. replied that "Daddy" had touched her with "his bone" that "came out of his pants." B. said it had hurt and that she had asked him to stop.

Visits were temporarily discontinued pursuant to a court order obtained on May 2,

1987, in the district court in the county where defendant resides.

On May 7, 1987, B. made more statements about the abuse to a child protection specialist. She said "someone" had put his penis "between her legs and up her butt." She would not say who the "someone" was because "she loved her Daddy and she didn't want him to get into trouble." She said the abuse happened "in her Daddy's house."

Defendant retained an attorney and obtained a court order in June allowing supervised visits.

B. was evaluated psychologically by a doctor, who talked with her four times. He concluded that there was a "high probability" that she had been involved in "inappropriate sexual activity."

On July 31, 1987, after a hearing, the court ordered reinstatement of defendant's unsupervised visitation privileges.

B. began weekly psychotherapy with Dr. Susan Lund of Midwest Children's Resource Center in August. On October 22, 1987, B. told Dr. Lund that defendant "pushed at her with his penis." She demonstrated this with anatomically correct dolls and said it happened during the recently reinstated unsupervised visits.

Hennepin County, the county of the mother's residence, obtained an order assuming custody of B. and her younger brother and terminating defendant's visitation privileges. More people interviewed B. in November and this prosecution was commenced in December of 1987.

The omnibus hearing was held in the district court in the county where the charged abuse occurred in June of 1988 shortly before trial was to begin. The hearing was held on the state's motion for permission to use the out-of-court statements of the complainant and on the defendant's motion to suppress the statements on the ground that their admission would violate defendant's constitutional right of confrontation. The parties stipulated, but

only for the purposes of the hearing, that B., then five, was incompetent to testify. The trial court ruled that the statements were admissible under Minn.Stat. § 595.02, subd. 3 (1988).[1] As the statute is worded, the statements cannot be admitted pursuant to the statute unless the child either (a) testifies at trial or (b) is unavailable and there is corroborating evidence. After ruling as it did, the trial court granted a continuance to the defendant so that the defense could try to obtain expert testimony and also so that defendant could decide whether to call B. to testify.

Defendant renewed his motion at the reconvened omnibus hearing in August, shortly before the rescheduled trial date. In support, he cited *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The trial court correctly ruled that *Coy* did not apply. In the order the trial court said that admissibility of the statements was conditioned on the unavailability of the victim.

On August 30, the first day of trial, defense counsel made a continuing objection to the out-of-court statements on the ground that their admission in evidence would violate defendant's right of confrontation. The trial court said defendant would have to make an additional objection if another ground developed. Defendant also said he intended to call B. The trial court therefore conducted an in-chambers competency hearing. The court said, "It is understood that neither party—if the court finds [B.] is competent * * * has to call her if [that party doesn't] wish to do so." The trial court subsequently determined that B. was competent. Defendant did not call B. When the state introduced B.'s statements, defendant made a continuing objection on hearsay grounds.

The jury found defendant guilty of criminal sexual conduct in the second degree.

The court of appeals, in concluding that the trial court erred in admitting the hearsay statements of the child, ruled (1) that the trial court's determination that the vic-

---

**1.** Although the trial court had ruled that B's videotaped statement made in November 1987 was inadmissible, at trial the videotape was admitted into evidence and shown to the jury pursuant to the parties' stipulation.

tim was competent meant that she was available, which in turn meant that both the statute and the constitution precluded use of the victim's out-of-court statements unless the state called her as a witness; (2) that Minn.Stat. § 595.02, subd. 3 deprives the courts of authority to admit out-of-court statements of child sex abuse victims pursuant to Minn.R.Evid. 803(24), the so-called catch-all exception; and (3) that Minn.R.Evid. 803(4), dealing with the admission of statements made for the purpose of medical diagnosis or treatment, does not afford a basis for admitting a victim's statement as to the identity of her abuser. We disagree with all of these conclusions and the reasoning underlying them.

■ First, the Constitution does not preclude the use of the victim's out-of-court statements unless the state has called her as a witness. In *State v. Koonsman,* 281 N.W.2d 487, 490 (Minn.1979), we rejected a defendant's contention that he was denied his right of confrontation by the state's failure to call the victims to testify at the omnibus hearing on the issue of the admissibility of identification testimony. We stated:

> We have rejected similar arguments before—see, e.g., *State v. Maloney,* 295 Minn. 262, 204 N.W.2d 202 (1973),—and we do so again. The objectives of the confrontation clause and the compulsory-process clause are to assist the defendant in securing the presence of witnesses and to enable the defendant to examine witnesses whose statements are used against him at trial. Westen, *Confrontation and Compulsory Process,* 91 Harv.L.Rev. 567, 616. Stated differently, confrontation and compulsory process "work in tandem toward a common goal of assisting the defendant in producing and examining witnesses at trial." *Ibid.,* p. 622. In any event, even if it could be said that the prosecutor breached some duty to call the victims, defendant should

not be able to claim that the interests served by confrontation and compulsory process were not served in this case because he had the right to call the victims at the hearing. Any other rule would permit a defendant to challenge his conviction in bad faith by pointing to the prosecutor's failure to call a witness whom defendant by his own action demonstrated he had no desire to examine. *Id.*

Subsequently, in *United States v. Inadi,* 475 U.S. 387, 394, 106 S.Ct. 1121, 1125, 89 L.Ed.2d 390 (1986), the United States Supreme Court ruled that the confrontation clause does not normally require a showing that the declarant is unavailable in order to admit out-of-court statements. The out-of-court statements in *Inadi* were made by nontestifying but available co-conspirators of the defendant. The Court said that the unavailability rule was developed in cases involving testimony given in an earlier trial, where there is good reason for such a rule, but that the rule does not apply to many kinds of hearsay admitted in criminal trials. *Id.* at 392–94, 106 S.Ct. at 1124–26. Recognizing that it would impose a significant practical burden on the prosecutor to insure the availability of declarants even when neither the prosecutor nor the defense wished to examine the declarant at trial, the Court rejected an unavailability rule:

> Any marginal protection to the defendant by forcing the government to call as witnesses those co-conspirator declarants who are available, willing to testify, hostile to the defense, and yet not already subpoenaed by the prosecution, when the defendant himself can call and cross-examine such declarants, cannot support an unavailability rule. We hold today that the Confrontation Clause does not embody such a rule.

*Id.* at 399–400, 106 S.Ct. at 1128–1129.[2]

The same reasoning applies here. As in *Inadi,* it is not at all clear that it was in the

---

**2.** In a footnote the Court also said:

> It is not clear from the Court of Appeals' opinion whether in order to meet its burden of showing unavailability, the prosecution

would be required to call the declarant as a witness, or only to insure that the declarant is available for testimony if needed. The unavailability rule suffers from many of the same

interests of the defendant that the declarant be called by either side. It may well have been better for the defendant to go to the jury and challenge the ambiguity of the child's statements (when she said that the abuse occurred in defendant's house but would not say who did it) than to have the child called and possibly testify in court that it was defendant who did it. Given the circumstances of this case, the *Inadi* approach makes sense to us, at least with respect to any constitutional claim.

█ Read literally, section 595.02, subdivision 3, recognizes the admissibility of a child's out-of-court statements only if the child either testifies or is unavailable as a witness. The legislature enacted the statute in 1984, two years before the United States Supreme Court made it clear in *Inadi* that the unavailability of the declarant is not always prerequisite to admissibility of hearsay evidence against the defendant in a criminal case. Understandably, since the question had yet been resolved, the legislature took the safe constitutional course and codified what it understood the confrontation clause of the sixth amendment required in order to make out-of-court statements admissible.

It may well be that in applying the statute as a matter of comity,[3] we could construe the statute as not requiring the state to call a child declarant who is available, at least where, as here, the defendant has not requested the state to call the child but has expressed his intention to call the child to testify. However, we see no need to rely on the statute to sustain the admission of the statements in this case.

By enacting section 595.02, subdivision 3, the legislature did not deprive the court of authority to admit extrajudicial statements of child complainants or witnesses pursuant to any court promulgated rule of evidence. As we have already noted, *supra* at n. 3, we have the primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters. Moreover, there is no reason to believe that the legislature was attempting to preempt the field. Indeed, the statute expressly authorizes the admission of certain out-of-court statements "not otherwise admissible by statute or rule of evidence," signifying an intention only to supplement the rules of evidence.[4] Here the out-of-court statements were admissible under two different rules of evidence, Minn.R.Evid. 803(24) and 803(4).

█ Minn.R.Evid. 803(24), one of the two so-called "catch-all" exceptions to the hearsay rule,[5] provides that a hearsay statement may be admitted even if not admissible under any of the other exceptions to the hearsay rule if the statement has "equivalent circumstantial guarantees of trustworthiness" and certain other conditions are

---

flaws under either interpretation, and in fact may be even less defensible under an interpretation requiring the prosecution to call each declarant as a witness.
475 U.S. at 398 n. 10, 106 S.Ct. at 1127 n. 10.

**3.** The court has the primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters but has enforced reasonable statutory rules of evidence as a matter of comity where the rules were not in conflict with the Minnesota Rules of Evidence. *State v. Dana,* 422 N.W.2d 246, 259 (Minn.1988); *State v. Willis,* 332 N.W.2d 180, 184 (Minn. 1984). We disagree with dictum contained in opinions of the court of appeals deferring to the legislature as the primary regulator of evidentiary matters. *E.g., In re Proposed Suspension, Revocation or Non–Renewal of the Nursing Home Licenses of Parkway Manor Healthcare Center and Innsbruck Healthcare Center,* 448 N.W.2d 116, 120–21 (Minn.App.1989), *pet. for rev. denied* (Minn., January 18, 1990).

**4.** In *State v. Bellotti,* 383 N.W.2d 308, 313 (Minn. App.1988), *pet. for rev. denied* (Minn., April 24, 1986), the court of appeals upheld the admission of certain out-of-court statements pursuant to Minn.R.Evid. 803(24), where those statements were deemed inadmissible under the statute. We have since rejected, in *State v. Dana,* 422 N.W.2d 246, 250 (Minn.1988), the conclusion of the court of appeals in *Bellotti* that the statements by one child about assaults on another child are inadmissible under the statute, but we have not rejected the conclusion that statements inadmissible under the statute may be admitted under one of our Minnesota Rules of Evidence.

**5.** The other is Minn.R.Evid. 804(b)(5). As the 1977 committee comment makes clear, but for the requirement of unavailability in rule 804(b)(5), this exception is identical to rule 803(24).

met.[6] Relevant cases of this court relying on rule 803(24) include *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn.1985) (ruling admissible accomplice's prior statement as substantive evidence under the rule and citing other cases involving the catch-all exceptions). We are satisfied that the out-of-court statements by the victim in this case had sufficient circumstantial guarantees of trustworthiness to justify their admission under this rule. *United States v. Shaw*, 824 F.2d 601, 610 (8th Cir.1987) (trial court did not abuse its discretion in admitting, under identical federal version of this rule, testimony by social worker about interview with 11–year–old victim of sexual abuse by foster father where strong circumstantial guarantees of trustworthiness were present), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988).

■ Similarly, the statements made for the purpose of medical diagnosis or treatment are independently admissible under Minn.R.Evid. 803(4).[7] Citing *State v. Dana*, 422 N.W.2d 246 (Minn.1988), the court of appeals held that the trial court may not rely on this rule to admit statements identifying the abuser. In *Dana*, however, we were not concerned with the admissibility of a patient's statements made for purposes of medical diagnosis or treatment [the type of statement covered by rule 803(4)] but rather with the admissibility of expert opinion testimony going to the identity of the child abuser. *Dana*, 422 N.W.2d at 250. In a number of cases, the Eighth Circuit of the United States Court of Appeals has upheld the admission under Fed.R.Evid. 803(4) of the victim's statement identifying the abuser on the theory that the identity of the abuser is pertinent to treatment. *See, e.g., United States v. De-Noyer*, 811 F.2d 436, 438 (8th Cir.1987) (the nature and extent of psychological problems which ensue and the nature of the treatment depend often on knowing the identity of the abuser); *see also, Goldade v. State*, 674 P.2d 721, 725 (Wyo.1983) (same), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984). We agree with the reasoning of these cases on this particular point.

■ We recognize, however, that a defendant who wants to cross-examine an available child witness whose extrajudicial statements are being used by the state should not be compelled to call the child as a witness if the defendant would prefer that the state call the witness. Therefore, using a modified version of the approach suggested by Professor Westen,[8] we hold that in future cases of this kind the state must, when *expressly* requested by the defendant to do so, call in its case-in-chief an available witness whose hearsay statements are being admitted against the defendant.

Since we have concluded that the trial court did not err in admitting the extrajudicial statements of the child complainant, there is no need to decide whether the

---

**6.** The rule provides that, even though the declarant is available as a witness, a statement not specifically covered by any of the other hearsay exceptions but having "equivalent circumstantial guarantees of trustworthiness" is admissible:

> [I]f the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name, address, and present whereabouts of the declarant.

**7.** Rule 803(4) provides that statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule even though the declarant is available as a witness. Statements covered by the rule are:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

**8.** *See* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567, 617–18 (1978).

court of appeals erred in ruling that the effect of the determination of the competency of a child witness is a factor to be considered in making that determination. Inasmuch as the availability of the witness is not determinative of the admissibility of extrajudicial statements, the problem which prompted the court of appeals' ruling should not recur. Moreover, relevant cases of this court do not suggest that the effect of the competency determination on the trial of the case is a factor which should be considered in deciding competency. *Cf. State v. Amos*, 347 N.W.2d 498, 501 (Minn. 1984); *State v. Yahnke*, 336 N.W.2d 299, 300 (Minn.1983).

In summary, we hold that the extrajudicial statements of the child complainant who was available to both prosecution and defendant but called by neither to testify were properly admitted. Accordingly, we reverse the decision of the court of appeals and affirm the defendant's conviction.

Reversed; judgment of conviction affirmed.

KELLEY, Justice (dissenting):

I respectfully dissent. At all steps of this criminal prosecution the defendant duly objected to the admission of out of court statements of the alleged victim on the grounds that since the testimony of the victim was crucial to the establishment of the elements of the crime charged, the state had the obligation to produce the victim in court for examination and cross-examination under the Sixth Amendment to the United States Constitution and Article I, Section Six of the Minnesota Constitution, each of which provides that the "accused shall enjoy the right * * * to be confronted with the witnesses against him." Any statute or court-promulgated rule of evidence, or any concern for "practical problems of prosecutors," in my view, cannot dilute that constitutional mandate. Moreover, admission of evidence in violation of the confrontation clause is seldom, if ever, harmless. *State v. Hansen*, 312 N.W.2d 96, 102–105 (Minn.1981). I would hold that if the state wishes to establish the crime by victim testimony, which is almost always the case in this type of prosecution, it must do so by producing the alleged victim on the witness stand in open court so the accused may be afforded his constitutional right of confrontation.

Consequently I would remand to the trial court for a new trial.